NATURAL RESOURCES DEFENSE
COUNCIL, INC.; Delaware
Audubon Society

v.

TEXACO REFINING AND
MARKETING, INC.,
Appellant.

No. 89-3684.

United States Court of Appeals,
Third Circuit.

Argued April 4, 1990.

Decided June 20, 1990.

Richard D. Allen (argued), Palmer L. Whisenant, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for appellant.

James F. Simon (argued), Nancy S. Marks, Nora J. Chorover, Natural Resources Defense Council, Inc., New York City, Richard R. Cooch, Cooch and Taylor, Wilmington, Del., for appellees.

Bruce J. Terris, Karen H. Edgecombe, Terris, Edgecombe, Hecker & Wayne, Washington, D.C., for amici curiae Public Interest Research Group of New Jersey, Inc., and Friends of the Earth.

Roger J. Marzulla, Hillary J. Salans, Powell, Goldstein, Frazer & Murphy, Washington, D.C., Ann Powers, Chesapeake Bay Foundation, Inc., Annapolis, Md., for amicus curiae Chesapeake Bay Foundation, Inc.

Before HIGGINBOTHAM, Chief Judge, COWEN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises out of a citizen suit filed by the Natural Resources Defense Council, Inc. and the Delaware Audubon Society (collectively referred to hereafter as "the NRDC") under § 505 of the Clean Water Act ("the Act"), 33 U.S.C. § 1365

(1982 and Supp. III), alleging that Texaco Refining and Marketing, Inc. ("Texaco") illegally discharged effluent into the Delaware River at its Delaware City refinery. After considering motions for summary judgment by both parties, the district court granted the NRDC's motion on the issue of liability and issued an order permanently enjoining Texaco from further illegal discharges. Because we find that the district court failed to apply the proper standard in deciding whether to issue an injunction under the Act, we will vacate the district court's order and remand the case for a new determination as to the appropriateness of injunctive relief.

## I.

In order "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), the Act makes unlawful the discharge of any pollutant into navigable waters except as authorized under specific sections of the Act. *See generally Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52–53, 108 S.Ct. 376, 379, 98 L.Ed.2d 306 (1987). One of these is § 402 which establishes the National Pollutant Discharge Elimination System ("NPDES"). 33 U.S.C. § 1342. Under § 402 either the Administrator of the Environmental Protection Agency ("EPA"), or a state which has established its own EPA-approved permit program, may issue a permit allowing effluent discharges in accordance with specified conditions. 33 U.S.C. § 1342(b), (c).

The holder of a state permit is subject to enforcement action by both the EPA and the state for failure to comply with the permit's conditions. 33 U.S.C. § 1319, 1342(b)(7). In addition, private citizens may bring civil actions against any person alleged to be in violation of a state permit if the federal or state agencies have not acted. 33 U.S.C. § 1365(a)(1). The Act allows the court in a citizen suit to order injunctive relief and/or impose monetary penalties. 33 U.S.C. § 1365(a).

The State of Delaware received its NPDES permit delegation from the EPA on April 1, 1974, and issued a permit to Texaco in 1977 allowing it to discharge limited quantities of 19 categories of industrial waste from its Delaware City refinery into the Delaware River. The permit imposes on Texaco both limitations on the amount of pollutants that can be discharged and monitoring requirements. Specifically, the permit establishes seven monitoring points inside the refinery—referred to as "outfalls"—and specifies the amount of each effluent category—referred to as "parameters"—that can be discharged at that point. Texaco must periodically conduct certain specified tests at each of the outfalls and publicly report the results in monthly Discharge Monitoring Reports ("DMRs").

As required by the Act, the NRDC notified Texaco in March 1988 that they intended to file a citizen suit against the company for 342 permit violations occurring at the Delaware City refinery between January 1983 and October 1987. Subsequently, on May 17, 1988, the NRDC filed a complaint charging Texaco with 354 violations, including some violations that had occurred since October 1987. The NRDC later dropped 11 alleged violations apparently in response to a statute of limitations argument raised by Texaco.

On December 9, 1989, Texaco filed a motion for partial summary judgment based on several grounds: the court's lack of subject matter jurisdiction over some of the alleged permit violations occurring prior to the filing of the complaint and which were not either ongoing or likely to recur; the claims were moot under the principles of *Gwaltney of Smithfield v. Chesapeake Bay Foundation Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); and that the claims were barred by the applicable statute of limitations. One week later the NRDC filed their own motion for summary judgment on the issue of liability based on the reported parameter exceedances in Texaco's DMRs. In their motion, the NRDC sought declaratory and injunctive relief, and requested a hearing to determine the appropriate amount of damages. On April 7, 1989, Texaco filed a supplemental motion

for summary judgment alleging that a recent ownership transfer of the Delaware City refinery[1] and the issuance of a new NPDES permit[2] to the new owner rendered the NRDC's claims moot.

The district court denied Texaco's motion for partial summary judgment reasoning that even if some of the parameter violations alleged by the NRDC were wholly past violations, i.e., not ongoing or likely to recur, the fact that other parameter violations were ongoing at the time the complaint was filed gave the court jurisdiction over all permit violations.[3] *Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.*, 719 F.Supp. 281, 287 (D.Del.1989). In addition, the court rejected Texaco's supplemental motion for summary judgment concluding that it could enjoin Texaco from violating the new permit, based on its violations of the old one, at least as to the old parameter limitations which are either incorporated into, or are less strict than, the parameter limitations listed in the new permit. *Id.* at 289–90. The district court also found that since Texaco is a 50% partner in Star Enterprise, the Act should not be narrowly construed to forbid enforcement against Texaco simply because it is not the currently named permit holder. *Id.* at 290–91.

The district court granted the NRDC's motion for summary judgment based on the submitted DMRs. The court rejected Texaco's argument that the prima facie violations contained in the DMRs were due to sampling errors, system upsets, or statistical outliers. Instead, the court held that as a matter of law the reported parameter exceedances in Texaco's DMRs were conclusive proof of permit violations and could not be impeached by either a claim of sampling error or that some of the alleged violations were statistical outliers. *Id.* at 288–89. Moreover, the court found that the upset defense was not incorporated into Texaco's permit, either expressly or by reference to the relevant sections of the EPA's regulations, and thus could not be raised by the company. *Id.* at 289. Thus, the court concluded that Texaco had raised no genuine issue of material fact as to its liability.

Having established that Texaco violated the Act, the court enjoined the company, its officers, agents, servants, employees, and those persons in active concert or participation with Texaco, and who receive actual notice of the court's order, from violating terms of the new permit which were either carried over from the old permit or were made stricter in the new version. *Id.* at 292; App. 462–64 (Order). The penalty phase of the case has not yet proceeded to trial.

Texaco now appeals the district court's order denying both its motion for summary judgment and its supplemental motion for summary judgment. In addition, Texaco appeals the district court's order granting the NRDC's motion for summary judgment and the issuance of a permanent injunction against the company. We have jurisdiction over that part of the district court's order

---

1. In November 1988, Texaco and the Saudi Arabian Oil Company formed a joint venture partnership called Star Enterprise. Star Enterprise acquired ownership of many of Texaco's assets, including the Delaware City facility. Each partner owns a 50% interest in the joint venture's assets.

2. On January 31, 1989, Delaware issued a new permit for the Delaware City refinery naming Star Enterprise as the permittee. This new permit differed from the old permit in several respects, including some changes in permissible effluent limits, the locations of certain outfalls, and the manner in which some effluent discharges are to be calculated. After the competing summary judgments were fully briefed to the district court, the NRDC submitted an additional letter to the court alleging three violations

of the new permit and offering DMRs to substantiate the claim. Texaco denied that the DMRs reflected actual permit violations. Believing that this information did not materially affect the parties' positions in the litigation, the district court did not rely on this new information in reaching its decision. Instead, the court specifically found that: "There have been no reported violations of any of the terms of the reissued permit." *Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.*, 719 F.Supp. 281, 283–84 (D.Del.1989).

3. The court noted that Texaco had admitted that some parameter violations were ongoing. *Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.*, 719 F.Supp. 281, 285 (D.Del.1989).

granting injunctive relief pursuant to 28 U.S.C. § 1292(a)(1) (1982).[4]

## II.

▮▮▮ Texaco argues on appeal that the district court erred by applying the wrong standard in determining whether to grant the NRDC's request for a permanent injunction. More specifically, Texaco argues that the court failed to apply traditional equitable principles in reaching its decision to enjoin the company, including placing the burden on the NRDC to prove that irreparable harm would ensue if the injunction was not granted. We review a trial court's grant of a motion for a permanent injunction for an abuse of discretion. *International Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 94 (3d Cir.1987). An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact. *Id.* at 95.

Although somewhat unclear, from our reading of the opinion it does appear that the district court presumed irreparable harm from the mere fact that the Act had been violated:

> Finally, [Texaco] contends that even if the Court were empowered to grant injunctive relief in the present case, such relief would be improper because [the NRDC] have failed to make the necessary showing of imminent irreparable harm. [The NRDC], on the other hand, take the position that traditional equitable principles need not be applied in this case because the [Act] authorizes the Court to enjoin NPDES permit violations on the basis of defendant's six-year pattern of non-compliance. [The NRDC's] position has ample support in this Circuit. For example, in *United States Postal Service v. Beamish*, 466 F.2d 804, 806 (3d Cir.1972), the Third Circuit held that a statute authorizing preliminary injunctive relief upon a showing of proba-

ble cause to believe that the statute is being violated can be considered a substitute for a finding of irreparable harm normally required for a preliminary injunction to issue. *See also Gov't of the Virgin Islands, Dep't of Conservation and Cultural Affairs v. Virgin Islands Paving, Inc.*, 714 F.2d 283, 286 (3d Cir. 1983). Consequently, based on the enabling language in the Act and the multiple violations contained in [Texaco's] DMR's [sic], injunctive relief is appropriate in this case.

*Texaco*, 719 F.Supp. at 291–92.

We agree with Texaco that the district court abused its discretion in this case by presuming irreparable harm and not explicitly applying the traditional equitable standard in determining whether an injunction was appropriate for remedying Texaco's violations of the Act. We believe that the United States Supreme Court's decisions in *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), and *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987), establish that equitable principles are not displaced by the Act. Furthermore, every circuit court that has interpreted *Romero–Barcelo* in this context is in accord with our view, as well as numerous district court opinions in this circuit and elsewhere. Finally, we find that the cases relied upon by the district court for its apparently contrary view that an injunction should automatically follow upon a finding of statutory violation are distinguishable from this case.

In *Romero–Barcelo*, the district court found that the Navy had violated the Act by discharging ordnance into the Atlantic Ocean during training operations without first obtaining an NPDES permit from the EPA. *Romero–Barcelo*, 456 U.S. at 307–08, 102 S.Ct. at 1800–01. The court declined to enjoin the training operations, however, and simply ordered the Navy to apply for a permit from the Administrator of the EPA. *Id.* at 310, 102 S.Ct. at 1802.

---

4. Texaco contends that this Court also has jurisdiction over the balance of the district court's order, i.e., denying both of Texaco's motions for summary judgment and granting the NRDC's motion, under the principles of *Kershner v. Mazurkiewicz*, 670 F.2d 440, 449 (3d Cir.1982) (in banc). Because of our disposition of this case, we need not decide this question.

Emphasizing in its opinion the broad discretion a court in equity possesses in deciding appropriate relief, the district court reasoned that the Navy's activities were not causing any appreciable harm to the environment, while injunctive relief would cause grievous, and perhaps irreparable, harm to the Navy and the general welfare. *Id.* The Court of Appeals for the First Circuit reversed and directed the district court to enjoin all Naval training activities until the Navy obtained a permit. The Court of Appeals held that the traditional equitable balancing of interests was inappropriate where there was an absolute statutory duty to refrain from any pollutant discharge until the permit procedure is followed. *Id.* at 310–11, 102 S.Ct. at 1802.

The Supreme Court reversed the Court of Appeals and remanded the case to the appellate court to review the district court's decision under an abuse of discretion standard. The Court noted that it had "repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Id.* at 312, 102 S.Ct. at 1803. The Court explained that in each case the court must balance the competing claims of injury and must consider the consequences to each party, and the public, of the granting or withholding of the requested relief. *Id.* Thus, "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunc-

tion for every violation of law." *Id.* at 313, 102 S.Ct. at 1803.

The Court cautioned that:

Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles. As the Court said in *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946):

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

*Romero–Barcelo*, 456 U.S. at 313, 102 S.Ct. at 1804 (citations omitted).[5] However, the Court found nothing in the Clean Water Act's language, structure or legislative history evidencing Congress' intent to deny courts their traditional equitable discretion. *Id.* at 316–18, 319, 102 S.Ct. at 1805–06, 1807. The Court of Appeals had erroneously focused on the integrity of the permit process rather than on the integrity of the Nation's water, the real purpose of the Act. *Id.* at 314, 102 S.Ct. at 1804.

Similarly in *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987), the Court of Appeals for the Ninth Circuit found that the Secre-

---

**5.** As an example of legislative intervention, the Court cited *TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). In that case, the Court held that Congress had foreclosed the traditional discretion exercised by a court in equity:

The statute involved, the Endangered Species Act, 87 Stat. 884, 16 U.S.C. 1531 *et seq.*, required the District Court to enjoin completion of the Tellico Dam in order to preserve the snail darter, a species of perch. The purpose and language of the statute under consideration in *Hill*, not the bare fact of a statutory violation, compelled that conclusion. Section 7 of the Act, 16 U.S.C. § 1536, requires federal agencies to "insure that actions authorized, funded, or carried out by them do not jeop-

ardize the continued existence of [any] endangered species . . . or result in the destruction or modification of habitat of such species which is determined . . . to be critical." The statute thus contains a flat ban on the destruction of critical habitats.

*Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313–14, 102 S.Ct. 1798, 1804, 72 L.Ed.2d 91 (1982). Since it was conceded that the Tellico Dam would destroy the snail darters' habitat, an injunction had to be issued because "Congress, it appeared to us, had chosen the snail darter over the dam." *Id.* at 314, 102 S.Ct. at 1804. Turning to the Clean Water Act, the Court noted: "That is not the case here. An injunction is not the only means of ensuring compliance [with the Act]." *Id.*

tary of the Interior had likely failed to comply with provisions of the Alaska National Interest Lands Conservation Act ("ANILCA") and directed the district court to grant a preliminary injunction preventing certain oil and gas lease activity. *Id.* at 540–41, 107 S.Ct. at 1401–02. The Ninth Circuit ruled that "injunctive relief is the appropriate remedy for a violation of an environmental statute absent rare or unusual circumstances." *Id.* at 541, 107 S.Ct. at 1402.

The Supreme Court again reversed, "see[ing] nothing which distinguishes *Romero–Barcelo* from the instant case" and finding "no clear indication in [ANILCA] that Congress intended to deny federal district courts their traditional equitable discretion in enforcing the [statute]...." *Amoco,* 480 U.S. at 544, 107 S.Ct. at 1403. The Court stated:

> Like the First Circuit in *Romero–Barcelo,* the Ninth Circuit erroneously focused on the statutory procedure rather than on the underlying substantive policy the process was designed to effect—preservation of subsistence resources. The District Court's refusal to issue a preliminary injunction against all exploration activities did not undermine this policy. The District Court ... expressly found that exploration activities would not significantly restrict subsistence uses. The Court of Appeals did not conclude that this factual finding was clearly erroneous.... Instead, the court stated that "irreparable damage is *presumed* when an agency fails to evaluate thoroughly the environmental impact of a proposed action." ... This presumption is contrary to traditional equitable principles and has no basis in ANILCA. Moreover, the environment can be fully protected without this presumption.

*Id.* at 544–45, 107 S.Ct. at 1403–04.

Every Court of Appeals, which has considered the question, has interpreted *Romero–Barcelo* and *Amoco to require* a district court to apply the traditional equitable standard before granting an injunc-tion in cases such as this. For example, the Court of Appeals for the Second Circuit, in *Town of Huntington v. Marsh,* 884 F.2d 648 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990), found that the "teaching of these [Supreme Court] cases seems clear." *Id.* at 652. "[I]n the area of environmental statutes, the Supreme Court has explicitly rejected the notion that an injunction follows as a matter of course upon a finding of statutory violation." *Id.* at 651. Thus, the Court of Appeals reversed the district court which had permanently enjoined the Army Corps of Engineers from dumping, or issuing permits to dump, dredged materials at a disposal site because the environmental impact statement filed by the Corps had violated the Ocean Dumping Act and the National Environmental Policy Act. *Id.* at 649. The Court of Appeals explained that the district court erred in not specifically finding that irreparable damage would ensue if the injunction was not issued:

> the district court appears to have ruled that the establishment of a statutory violation, without more, warranted an injunction. The court determined that the public interest "in maintaining the physical, chemical and biological balance at the dumpsite" outweighed the competing private interest, defined as "inconvenience and additional cost to owners of docks and piers," resulting in a determination that "plaintiffs have established irreparable damage." No consideration was given, however, to the question whether plaintiff had met its burden to establish some actual or threatened injury to "the physical, chemical and biological balance at the dump site [sic]," as distinguished from the Corps' conceded failure to generate a proper EIS before its initial designation of [the dumpsite].

*Id.* at 654. *See also Northern Cheyenne Tribe v. Hodel,* 851 F.2d 1152, 1155–56, 1157–58 (9th Cir.1988); *National Wildlife Fed'n v. Burford,* 835 F.2d 305, 318, 323–24 (D.C.Cir.1987); *Commonwealth of*

*Mass. v. Watt,* 716 F.2d 946, 951–53 (1st Cir.1983). *Cf. United States v. Lambert,* 695 F.2d 536, 540 (11th Cir.1983) (without citing *Romero–Barcelo,* the court held that: "Environmental litigation is not exempt from [the] requirement" that the plaintiff must prove "irreparable harm is likely if an injunction is not granted [for a violation of the Act]").[6] Indeed, district courts both in this circuit, *see, e.g., Public Interest Research Group of N.J., Inc. v. CP Chemicals, Inc.,* 26 E.R.C. 2017 (D.N.J. 1987), and in other circuits, *see, e.g., Natural Resources Defense Council, Inc. v. Outboard Marine Corp.,* 692 F.Supp. 801, 821–23 (N.D.Ill.1988), have applied the traditional equitable standard in determining whether to grant preliminary and permanent injunctions for violations of the Act.

The two cases cited by the district court in support of its apparently contrary position are inapposite. In *United States Postal Service v. Beamish,* 466 F.2d 804 (3d Cir.1972), this Court affirmed an injunction by the district court even though the district court had not applied the traditional equitable standard. And, in *Government of Virgin Islands, Dep't of Conservation and Cultural Affairs v. Virgin Islands Paving, Inc.,* 714 F.2d 283 (3d Cir.1983), the NRDC apparently contends—and the district court appears to assume—that this Court reversed the district court's denial of a preliminary injunction because the district court should not have applied the traditional equitable standard in deciding the question.[7] However, both of these cases are distinguishable from the case *sub judice* because the statutes under which the injunctions were sought in *Beamish* and *Virgin Islands* clearly circumscribed the traditional equitable discretion courts possess in granting injunctive relief. In *Beamish,* the postal service provision in question provided that: "the United States district court ... shall ... upon *a showing of probable cause* to believe ... [that 39 U.S.C. § 3005] is being violated, enter a temporary restraining order and preliminary injunction...." *Beamish,* 466 F.2d at 806 (quoting from 39 U.S.C. § 3007) (emphasis added). Likewise, in *Virgin Islands,* the statute in question, the Virgin Islands Coastal Zone Management Act of 1978, provided for preliminary injunctive relief upon a *"prima facie showing* of a violation." *Virgin Islands,* 714 F.2d at 284

---

**6.** Moreover, in a different context this Court has cited *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), for the proposition that, absent a clear Congressional statement, courts should not infer that Congress intended to alter equity practices. *Flynn v. United States By and Through Eggers,* 786 F.2d 586, 591 (3d Cir.1986). In *Flynn,* we were construing § 6213(a) of the Internal Revenue Code which states that a court "may" grant injunctive relief under specified conditions. *Id.* Combining Congress' use of the conditional with *Romero–Barcelo,* we held that relief was not mandatory simply because the statutory conditions were met, but instead lies within the discretion of the court. *Id.* Therefore, we found "no reason to cast off those principles that traditionally have informed the exercise of a court's broad equity powers," and required the plaintiff to prove inadequacy of a legal remedy to prevent an irreparable injury before an injunction should issue under this statutory provision. *Id.*

**7.** Whether this Court actually held that the district court should not have applied traditional equitable principles in *Government of Virgin Islands, Dep't of Conservation and Cultural Affairs v. Virgin Islands Paving, Inc.,* 714 F.2d 283 (3d Cir.1983), is not clear. At one point we said

that there is no reason for the district court not to apply the same approach as in *United States Postal Service v. Beamish,* 466 F.2d 804 (3d Cir.1972), when ruling on a motion for a preliminary injunction, i.e., "a statutory provision authorizing preliminary injunctive relief upon a showing of probable cause to believe that the statute is being violated may be considered a substitute for a finding of irreparable harm...." *Virgin Islands,* 714 F.2d at 286. However, we ended the opinion by explaining:

> We do not suggest that the district court does not retain discretion as to whether a preliminary injunction should issue. However, such discretion can be prudently exercised only after the relevant factors have been evaluated. In this case, one of the most significant factors to be considered is the public interest which underlies the Air Pollution Control and Coastal Zone Management Acts.

*Id.* at 286. Thus, the actual import of *Virgin Islands* is probably that a court may use its equitable discretion in not issuing an injunction even if the statutory standard is satisfied. At any rate, for purposes of this discussion, even if we adopt the view of *Virgin Islands* most favorable to the district court, we still find the court's reliance on the case unavailing.

(quoting from 12 V.I.C. § 913(b)(1)) (emphasis added). In both of these cases, the legislature had effectively intervened through the statute and guided or controlled the exercise of the courts' traditional discretion. Thus, both of these statutes are the type that the Supreme Court distinguished from the Clean Water Act in *Romero–Barcelo*. *See Romero–Barcelo*, 456 U.S. at 313–14, 102 S.Ct. at 1804–05.[8]

█ Thus, it is clear to us that a district court may issue a permanent injunction under the Act only after a showing both of irreparable injury and inadequacy of legal remedies, and a balancing of competing claims of injury and the public interest. *Amoco*, 480 U.S. at 544–47, 107 S.Ct. at 1403–05. From our reading of the district court's opinion in this case it is far from certain that such issues were considered and decided upon by the court. Rather, the district court—especially in light of its finding that no violation of the new permit has occurred—appears to have erroneously presumed irreparable harm from the mere fact of statutory violation, thus improperly focusing on the integrity of the permit process rather than the integrity of the Nation's waters. We will remand the case to the district court, therefore, for a proper determination of whether an injunction should issue. However, we do recognize, and so advise the district court on remand, that in applying the traditional equitable standard: "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.* irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco*, 480 U.S. at 545, 107 S.Ct. at 1404.

### III.

As previously noted, Texaco raises numerous issues on appeal relating to the district court's denial of its motion for summary judgment, supplemental motion for summary judgment, and the court's grant of summary judgment to the NRDC. At oral argument, however, Texaco urged this Court not to reach any other issues it has raised if we decided the standard for injunctive relief issue in its favor. Since we do decide this issue in Texaco's favor, we believe that no other issue need be reached in order to effectively resolve this interlocutory dispute between the parties. *Sethy v. Alameda County Water Dist.*, 545 F.2d 1157, 1163 (9th Cir.1976).

### IV.

In summary, we find that the district court erred in issuing a permanent injunction against Texaco without first applying the traditional equitable standard as to when such an order is appropriate. Thus, we will vacate the portion of the district court's order enjoining Texaco not to violate its new NPDES permit and remand this case to the district court to apply the proper standard. Each party to bear its own costs.

---

**8.** See also the discussion in note 5 *supra*.
The NRDC relies on another opinion of this Court for its position that an injunction may issue after a violation of the Act without a determination of the balance of harms. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir.1989). However, this case also gives the NRDC no comfort. First, the discussion in *Air Freight* as to the proper standard to apply in statutory injunction situations is dictum. And, second, in our view the discussion in *Air Freight* does not differ materially from our discussion of *Government of Virgin Islands, Dep't of Conservation and Cultural Affairs v. Virgin Islands Paving, Inc.*, 714 F.2d 283, 286 (3d Cir.1983), and, therefore, does not support the position advanced by the NRDC.