**TOBYHANNA CONSERVATION ASSOCIATION, Plaintiff,**

v.

**COUNTRY PLACE WASTE TREATMENT FACILITY, Defendant.**

No. 3:CV–89–0823.

United States District Court, M.D. Pennsylvania.

July 9, 1991.

John E. Childe, Jr., Hummelstown, Pa., for plaintiff.

Marshall E. Anders, Stroudsburg, Pa., Kevin J. McKeon, Malatesta, Hawke and McKeon, Harrisburg, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff Tobyhanna Conservation Association ("Tobyhanna") filed this action against the Country Place Waste Treatment Company ("Country Place") under

the Federal Water Pollution Control Act Amendments (the "Clean Water Act").[1] Country Place operates a waste treatment facility in Monroe County, Pennsylvania[2] under a National Pollution Discharge Elimination System Permit ("NPDES permit") issued by the Pennsylvania Department of Environmental Resources ("DER").[3] Under the NPDES permit, Country Place is authorized to discharge treated effluent into Dresser Run, a local stream.[4] That authorization is conditioned on Country Place's compliance with discharge limitations, as well as monitoring and reporting requirements imposed by the permit and federal and state regulations.

Tobyhanna is a non-profit organization dedicated to preserving and protecting the Tobyhanna Creek watershed.[5] It alleges, in this action filed under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, that Country Place has violated its NPDES permit and that the resultant pollutant discharge is detrimentally affecting aquatic life in the Tobyhanna Creek watershed.

Tobyhanna bases these allegations on a period of noncompliance which began in approximately January, 1985[6] and continued, to one degree of another, until January, 1990, the date of the last reported violation. Defendant's compliance record can be summarized as follows. Violations were reported for each month from Janu-

ary through and including October, 1985, for February, 1987, for each month from January through and including October, 1988, for January and February, 1989 and for January, 1990. No subsequent violations have been reported.[7]

The parties have filed cross motions for summary judgment as well as related motions to supplement the record and to compel discovery. Tobyhanna has filed a motion for partial summary judgment based on the numerous violations reported by Country Place from 1985 through January, 1990. Country Place has filed a motion for summary judgment based on the cessation of violations after January, 1990. It contends that because there are no ongoing violations, this court no longer has subject matter jurisdiction over plaintiff's action under the United States Supreme Court ruling in *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

After reviewing the record and considering the arguments of both parties, we find that material issues of fact preclude entry of summary judgment in favor of either party. Both parties' motions to supplement the record[8] will be granted. Plaintiff's motion to compel[9] will be granted.

### A. Motions to supplement the record

■ Defendant has filed a motion to supplement the record in support of its motion

1. 33 U.S.C. §§ 1251 *et seq.*

2. Country Place serves a residential development in Coolbaugh Township, Monroe County.

3. Defendant's permit (Permit No. PA–0060097) was issued by the Bureau of Water Quality Management pursuant to 33 U.S.C. §§ 1311(a) and 1342(a) and the Pennsylvania Clean Streams Law, as amended, 35 P.S. §§ 691.1 *et seq.* The permit was issued November 29, 1989 and will expire on November 28, 1994.

4. Dresser Run is a tributary of Tobyhanna Creek.

5. Its members use Tobyhanna Creek for fishing and recreational purposes. Affidavit of Bill Leonard, attached to plaintiff's response to defendant's motion for summary judgment as exhibit "C."

6. Violations occurring more than five years before commencement of this action are barred

by the statute of limitations. *Natural Resources Defense Council v. Texaco*, 906 F.2d 934, 935 (3d Cir.1990).

7. The parties have not filed Discharge Monitoring Reports ("DMR's") with the court for each month during the period from January, 1985 to January, 1990. It appears to the court that DMR's were submitted only for the months during which permit violations occurred. Based on that assumption, we infer that no violations occurred during November or December 1985; or during January, March, April, May, June, July, August, September, October, November, or December, 1987; or during June, July, August, September, October, November, December, 1988.

8. Record Document Nos. 76 and 90.

9. Record Document No. 59.

for summary judgment by adding its Discharge Monitoring Reports for the months of April, 1990 through February, 1991, along with an affidavit from an administrator verifying their authenticity. Defendant's motion will be granted.

Plaintiff has likewise filed a motion to supplement the record in support of its motion for partial summary judgment by adding a copy of a recent Second Circuit decision, *Atlantic States Legal Foundation Inc. v. Tyson Foods Inc.*, 897 F.2d 1128, 1135 (11th Cir.1990). Plaintiff's motion will be granted.

### B. Motion to compel

■ Plaintiff has filed a motion to compel discovery. Fed.R.Civ.P. 37. It seeks to compel the deposition of Ron Tussel, an administrator for Country Place, and Robert Milnes, an engineer for Country Place. Plaintiff also seeks records relating to defendant's plant design for use by its environmental engineer in formulating his opinion. It contends that defendant has promised to produce such records, but that they have not been forthcoming. Plaintiff's motion will be granted, and the discovery period will be reopened for the limited purpose of allowing plaintiff to conduct such discovery.

### C. Jurisdictional requirements under the Act

The Clean Water Act bans the discharge of any pollutant into navigable waters unless specifically authorized by the Act or regulations enacted thereunder. *Gwaltney*, 484 U.S. at 52–53, 108 S.Ct. at 378–79. Section 402 of the Act establishes the National Pollutant Discharge Elimination System ("NPDES") which provides for the issuance of permits allowing the discharge of pollutants, provided the permittee complies with certain conditions. 33 U.S.C. § 1342. Permits may be issued by the Environmental Protection Agency ("EPA"), or by

states which have established an EPA-approved permit procedure.

The permits specify "parameters" or categories of pollutants which the permittee may discharge and sets defined limits for each parameter. Permit holders are required to monitor the discharge of pollutants, to test for certain pollutants at designated intervals and to report the test results in monthly Discharge Monitoring Reports ("DMR's"), which are filed with the issuing agency.

If permit violations occur, the EPA, or the issuing state agency, may commence an enforcement action for civil or criminal penalties, injunctive relief or all three. 33 U.S.C. § 1319, 1342(b)(7). The Act also contains a provision which allows affected private citizens to file a civil action against a permit violator, if no government enforcement has been filed or is being "diligently prosecuted".[10]

The Supreme Court has interpreted this provision as restricting citizen actions to situations in which there are ongoing permit violations or "good faith" allegations of "continuous or intermittent violations." *Gwaltney, supra*, 484 U.S. at 64, 108 S.Ct. at 385. Because the citizen suit provision is phrased in the present tense, the Supreme Court concluded that Congress did not intend to confer a right on private citizens to file or maintain an action for "wholly past" violations if there is no reasonable likelihood of recurrence. *Gwaltney, supra*, 484 U.S. at 57, 108 S.Ct. at 381. See also: *Natural Resources Defense Council v. Texaco*, 906 F.2d 934, 935 (3d Cir.1990).

Since *Gwaltney*, the federal courts have struggled to determine how the continuing violation requirement should be applied and how it relates logically to, and impacts on, requirements of proof after an initial determination of jurisdiction has been made.[11] In a recent decision, the Fifth Circuit discussed this issue at length.

---

**10.** If the citizens prevail in a private enforcement action, any penalties assessed against the violator are payable to the United States Treasury. 33 U.S.C. § 1365(a).

**11.** See, e.g., *Atlantic States Legal Foundation Inc. v. Tyson Foods Inc.*, 897 F.2d 1128, 1135 (11th Cir.1990) and *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 693 (4th Cir.1989).

In *Carr v. Alta Verde Industries, Inc.*, 931 F.2d 1055 (5th Cir.1991), the Fifth Circuit reversed the district court's dismissal of the action for lack of standing, and explained that the district court had misconstrued the import of *Gwaltney* and misapplied the standards it established. The appellate court explained that at summary judgment stage,[12] if the defendants challenge the factual basis for plaintiff's allegations of continuous or intermittent violations, they are required to prove that plaintiff's allegations on this issue fail to raise a genuine issue of material fact.

The *Carr* court further explained that when the case proceeds to trial, the burden is then on the plaintiff to prove its allegations of continuing violations and that this is not "a threshold matter in order to invoke the District Court's jurisdiction" at this stage, but rather a necessary element of plaintiff's case which it must prove to prevail on the merits. *Carr, supra,* 931 F.2d at 1061 and 1064 n. 7, interpreting *Gwaltney, supra,* 484 U.S. at 66, 108 S.Ct. at 386.

The Fifth Circuit adopted a two-pronged test, initially formulated by the Fourth Circuit on remand in *Gwaltney*, for determining whether plaintiff has proven this element. *Carr, supra,* 931 F.2d at 1064 ("Both the Supreme Court and the Fourth Circuit on remand ... clearly placed the burden on the plaintiff to prove at trial his allegations of a continuing or intermittent violation.") That test provides that a plaintiff can demonstrate the existence of an ongoing violation by either (1) proving that violations continued on or after the date of filing, or (2) presenting evidence which supports a reasonable inference that there is continuing likelihood of intermittent or sporadic violations. The Fourth Circuit further held that, under this test, intermittent or sporadic violations "do not cease to be ongoing until the date when there is no real likelihood of repetition." *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.,* 890 F.2d 690, 693 (4th Cir.1989).

In *Carr*, the Fifth Circuit elaborated on this test and reviewed the history of this requirement, stating:

> The issue is whether the plaintiff proved that the defendant continued to violate the Act subsequent to the complaint, or was likely to violate the Act intermittently. Evidence of the likelihood of a discharge at any time subsequent to the complaint is probative of this question, and proof of an actual violation subsequent to the complaint is conclusive.
>
> . . . .
>
> On remand in Gwaltney ... the Fourth Circuit concluded that the plaintiff must prove at trial an ongoing violation "at the time suit was brought." *Gwaltney,* 890 F.2d 690, 693 (4th Cir.1989) ("The question is whether, at the time suit was brought, there was a reasonable likelihood that this past polluter would continue to pollute in the future."); see also *Sierra Club v. Union Oil Co. of California,* 853 F.2d 667, 671 (9th Cir.1988) (" 'the district court may wish to consider ... any other evidence presented during the proceedings that bears on whether the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit' ") (quoting *Gwaltney,* 844 F.2d 170 at 171–72); *Atlantic States Legal Foundation v. Tyson Foods,* 897 F.2d 1128, 1134 (11th Cir.1990) ("we find that for purposes of assessing a plaintiff's allegations of ongoing violations, the court must always

---

**12.** The usual summary judgment standards (in addition to the special criteria discussed above), of course, apply to our consideration of the parties' respective motions.

As in any context, summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the non-moving party. Material facts are those which will affect the outcome of the trial under governing law." *Celotex v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) and *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988).

look to the date the complaint was filed"). The Fourth Circuit's conclusion is also consistent with the Supreme Court's statement in Gwaltney that if "the case proceeds to trial on the merits ... the plaintiff must prove the allegations in order to prevail." 484 U.S. at 66, 108 S.Ct. at 386. The allegations to which the Supreme Court refers are the plaintiff's allegations of an ongoing violation at the time of the complaint for purposes of demonstrating standing. The most natural reading of this statement is that the Supreme Court intended for the plaintiff to prove these same allegations at trial.

*Carr, supra,* 931 F.2d at 1065 and n. 12.

■ The Fifth Circuit explained the rationale for this application by noting that all questions of subject matter jurisdiction, except mootness, are determined as of the date an action is filed. "Subject matter jurisdiction 'depends on the state of things at the time of the action brought' ". *Carr, supra,* 931 F.2d at 1061, quoting *Gwaltney, supra,* 484 U.S. at 69, 108 S.Ct. at 387 (Scalia, J., concurring) (quoting *Mullen v. Torrance,* 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824)). If jurisdiction existed when the suit was filed, subsequent events do not divest the court of it. *Carr, supra,* 931 F.2d at 1061 citing *Gwaltney, supra,* 484 U.S. at 69, 108 S.Ct. at 387 (Scalia, J., concurring). See also: *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957) ("jurisdiction is tested by the facts as they existed when the action is brought") and *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.").

■ Accordingly, post-complaint events are relevant only to the extent that they demonstrate mootness. *Carr, supra,* 931 F.2d at 1065 n. 10. Post-filing improvements or alterations made by the defendant for the purpose of correcting the cause of permit violations are not otherwise relevant

in determining whether the action should proceed.

In *Gwaltney,* the Supreme Court noted that mootness is the proper avenue for dismissing a case if post-filing events have rendered the initial problem a non-issue. *Gwaltney,* 484 U.S. at 66, 108 S.Ct. at 386, citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953). The mootness doctrine, as interpreted by the Supreme Court, was summarized by the Fourth Circuit in *Cedar Coal Co. v. United Mine Workers,* 560 F.2d 1153 (4th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978), which stated:

> [C]ourts are not empowered to decide moot questions or abstract propositions, but the exercise of judicial power depends upon the existence of a case or controversy. The suit must be definite and concrete, touching the legal relations of parties having adverse legal interests and be a real and substantial controversy admitting of specific relief through a decree of conclusive character as distinguished from an opinion of what the law would be upon a hypothetical statement of facts.

*Cedar Coal, supra,* 560 F.2d at 1162 (paraphrasing *North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)).

■ In the context of environmental actions, the doctrine has a special application. As always, the defendant bears the heavy burden of proving that the controversy is moot, and as in any other context, merely showing that the allegedly illegal conduct has ceased does not render the case moot. *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Additionally, in an action under the Clean Water Act, the defendant must demonstrate that "there is no reasonable expectation that the wrong will be repeated." *Carr, supra,* at 1064 n. 7, interpreting *Gwaltney,* U.S. at 66, 108 S.Ct. at 386. A stringent standard is necessary to protect plaintiffs from defendants who attempt to evade sanctions by predictable "protestations of repentance

and reform." *Gwaltney*, 484 U.S. at 66, 108 S.Ct. at 386.

Of the circuits which have addressed this issue, at least three, the Fourth, Fifth and Eleventh Circuits "have held that post-filing compliance does not moot a citizen's action for civil penalties." *Carr, supra,* 931 F.2d at 1064, citing *Gwaltney, supra,* 890 F.2d at 696 ("In our view, the penalty factor keeps the controversy alive between plaintiffs and defendants in a citizen suit, even though the defendant has come into compliance and even though the ultimate judicial remedy is the imposition of civil penalties assessed for past acts of pollution.") and *Atlantic States Legal Foundation Inc. v. Tyson Foods Inc.,* 897 F.2d 1128, 1135 (11th Cir.1990) ("[T]he mooting of injunctive relief does not moot the request for civil penalties as long as such penalties were rightfully sought at the time the suit was filed."). See also: *Fallowfield Development Corp. v. Strunk,* No. 89–8644, slip op. at 11 (E.D.Pa. April 23, 1990) (available on WESTLAW at 1990 WL 52745) ("When a company has violated an effluent standard or limitation, it remains, for purposes of § 505(a), 'in violation' of that standard or limitation so long as it has not put in place remedial mea-sures that clearly eliminate the cause of the violation.")

### D. Defendant's motion for summary judgment

■ With this background, we turn to the issues before us. Country Place argues that it is no longer "in violation", because it has a two-year, post-filing record of compliance.[13] As we have stated, however, a mere showing of post-filing compliance is insufficient to render the action moot. There must be an additional showing that there is no possibility of recurrence, i.e., that whatever caused the problem has been rectified.

Not only is such evidence lacking here, there is evidence which suggests that the problem has not been rectified, namely the January, 1990 episode of non-compliance. Although defendant offers a plausible explanation[14] for the cause of that violation, it nevertheless stands as a violation.[15]

Plaintiffs have also submitted evidence, in the form of an expert report, which suggests that design deficiencies in defendant's system will cause ongoing problems and make it exceedingly difficult for them to comply consistently with their permit parameters. Plaintiff has submitted a report from Albert C. Gray, an environmental

---

**13.** See p. 741 *supra.*

**14.** Country Place explains that the January 1990 violation is attributable to weather conditions, not a system malfunction.

Its explanation is as follows: During the two week period prior to the January tests, the weather was uncharacteristically frigid; temperatures plummeted well below freezing and remained there for several weeks. About two weeks before the January test samples were drawn, bacterial cultures were introduced into the treatment facility. Those cultures should have reduced pollutants in the treated waste water to acceptable levels before the treated water was released into Dresser Run. However, due to the unusually frigid weather, the acclimation time for the cultures was much longer than it should have been. As a result, the bacteria left the facility's lagoon while still in the "log-growth" phase, a phase in which they are inefficient at reducing BOD levels. This is due to the fact that much of the bacteria's energy is devoted to manufacturing new cells, and not to the task for which they were introduced into the system, i.e. reducing pollutant levels. After preliminary tests performed in early January indicated that there were problems, the program was halted in an effort to bring BOD levels within acceptable levels, but the continuing cold spell made that task exceedingly difficult. Several additional weeks were required to eliminate the introduced biomass from the system and normalize the process. As outside temperatures rose, conditions within the treatment facility returned to normal, and BOD readings stabilized at acceptable levels. See defendant's exhibits in support of its motion for summary judgment, affidavit of Ronald M. Tussel, paras. 6–8.

**15.** The Clean Water Act is a strict liability act, and violations of the permit parameters are excusable only if the permit holder is entitled to avail itself of an upset defense. State permittees are entitled to assert such a defense only if their permit so provides, and the permit issued to Country Place does not provide for the assertion of an upset defense.

Thus, Country Place's DMR's for the month of January, 1990 stand as conclusive evidence that a violation was committed.

consultant employed by Jaca Corporation, which states, *inter alia*, that the system is prone to breakdowns and malfunctions which will result in pollutant discharges because it must be monitored constantly and because aspects of the treatment process defendants have chosen to utilize are difficult to "control and adjust biologically." In Gray's opinion, such breakdowns can cause serious environmental consequences. He states:

> Temporary malfunction, miscalibration, or breakdown of the chemical feed system and monitoring instrumentation can have significant and immediate adverse impact. By the time the problem is diagnosed and remediated, significant environmental damage can occur.

*E.  Plaintiff's motion for partial summary judgment*

■ Although defendant's DMR's reporting permit violations constitute conclusive evidence that violations have occurred in the past, plaintiff must, nevertheless, prove ongoing violations at trial. For that reason, partial summary judgment in its favor is not appropriate.

We will, therefore, list this case for trial. The trial will be bifurcated,[16] with the first stage limited to the issue of whether there are ongoing violations, as defined by the Supreme Court in *Gwaltney, supra,* and the appellate courts in subsequent decisions.

\* \* \* \* \* \*

Based on the evidence before us, we find that material issues of fact preclude us from granting summary judgment in favor of either party.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. The motion (Record Document No. 76, filed July 16, 1990) to supplement the record filed by plaintiff is granted.

2. The motion (Record Document No. 90, filed March 22, 1991) to supplement the record filed by defendant is granted.

3. The motion (Record Document No. 59, filed April 9, 1990) to compel filed by plaintiff is granted. The discovery period is reopened for the limited purpose of allowing plaintiff to depose the two representatives of Country Place named in its motion to compel and requiring defendants to provide plaintiff with the requested information on its plant design at least fourteen days prior to the scheduled depositions.

4. The motion (Record Document No. 64, filed April 27, 1990) for summary judgment filed by defendant is denied.

5. The motion (Record Document No. 62, filed April 26, 1990) for partial summary judgment filed by plaintiff is denied.

6. The case is placed on the September, 1991 non-jury trial list,[1] with the date to be set at the pre-trial conference.

7. The final pre-trial conference will be held on August 30, 1991, at a time to be announced, in Room 409, Federal Building, 240 West Third Street, Williamsport, Pennsylvania.

---

**16.** Fed.R.Civ.P. 42(b).

**1.** No demand for a jury trial has been made pursuant to Fed.R.Civ.P. 38(b). See: *Tull v. United States,* 481 U.S. 412, 425–27, 107 S.Ct. 1831, 1839–41, 95 L.Ed.2d 365 (1987) (Parties to an action filed under the Clean Water Act, 33 U.S.C. §§ 1251 et seq., have a constitutional right to a jury trial under the Seventh Amendment to determine liability on the legal claims, although the court, not the jury, determines the amount of the penalty, if any, imposed.)