STUDENT PUBLIC INTEREST RE-SEARCH GROUP OF NEW JERSEY, INC. and Friends of the Earth, Plaintiffs,

v.

MONSANTO COMPANY, Defendant.

Civ. A. No. 83–2040.

United States District Court, New Jersey.

Jan. 21, 1985.

See also, 600 F.Supp. 1474.

Michael Gordon, West Orange, N.J., Terris & Sunderland by Bruce J. Terris, Carolyn A. Smith, Washington, D.C., for plaintiffs.

Davis, Reberkenny & Abramowitz, P.A. by Robert F. Blomquist, Cherry Hill, N.J., for defendant.

## OPINION

GERRY, District Judge.

This action is a citizens' suit, brought under § 505 of the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1365. The plaintiffs seek declaratory and injunctive relief, the imposition of civil penalties, and an award of costs, including attorneys' and expert witnesses' fees.

The complaint states that pursuant to § 402 of the Act (33 U.S.C. § 1342), the Environmental Protection Agency (EPA), and later the New Jersey Department of Environmental Protection (NJDEP), issued National Pollutant Discharge Elimination System (NPDES) permits to Monsanto Company authorizing the latter to discharge limited quantities of pollutants from its facility in Bridgeport, New Jersey, into the Delaware River. The permits date from November 21, 1974 and about March 6, 1981, respectively. Section 308 of the Act (33 U.S.C. § 1318) requires facility operators to file reports regarding the discharge of pollutants and instances of noncompliance with permit standards. Section 301(a) of the Act (33 U.S.C. § 1311(a)) makes it unlawful to discharge pollutants where such discharge exceeds the limits authorized by permits issued under § 402. The complaint alleges that, based on a comparison of the permits and the § 308 reports, it is clear that Monsanto Company is acting in violation of the Act by discharging higher levels of substances than the permits issued allow. Plaintiffs seek a declaration that Monsanto Company has violated and continues to violate the Act; an injunction against further violations; the imposition of civil penalties of $10,000 per day of violation for each violation; and an award of costs, including attorneys' and experts' fees.

**1482**

As required by § 505(b) of the Act (33 U.S.C. § 1365(b)), the plaintiffs have given 60 days' notice of the alleged violation and the intention to institute suit to the EPA, the NJDEP and Monsanto. Notice was given March 4, 1983; the complaint was filed June 6, 1983. On May 9, 1983, following notice but prior to suit, the EPA instituted an enforcement action against Monsanto Company. The enforcement order required Monsanto Company to submit a report within 30 days detailing the cause of the violations of the Act and to present a plan for correcting the violations within 90 days. The May 9 order states that the terms of the permit issued pursuant to § 402 remain in effect and are not waived by the enforcement action.

Before the court are two motions. The defendant seeks to dismiss the action on a variety of grounds. The plaintiffs, meanwhile, seek partial summary judgment on the issue of the defendant's liability for violations of the Act.

### 1. *Defendant's Motion to Dismiss*

In support of its motion to dismiss, the defendant puts forth a multitude of arguments for the court to address.

■ A. First, it is argued, the terms of § 505 (33 U.S.C. § 1365) bar a citizen's suit where, as here, there is an EPA enforcement action in progress. The statute, in pertinent part, states:

No action may be commenced [by a private citizen] if the Administrator [of the EPA] or State has commenced or is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order. ...

The defendant argues that we should ignore the plain wording of the statute and rule that an enforcement proceeding within the administrative agency satisfies the terms of the statute. In support of its position, Monsanto Company urges that, in reliance on Ballantine's Law Dictionary, we find an agency which has initiated enforcement action to be a court. The plaintiffs have diligently researched the legislative history of the Water Pollution Control Act Amendments of 1972 and have brought to the court's attention the fact that Congress *did* contemplate the possibility that agency action, if adequate, might serve as a bar to a citizen action. *See* S.Rep. No. 414, 92nd Cong., 1st Sess., 80 (1971), U.S.Code Cong. & Admin.News 1972, 3668. The Third Circuit, in *Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215 (1979), construing the similar citizen suit provision of the Clean Air Act, held that there may be instances where agency enforcement action could constitute court action and thus bar citizen suits. But the *Baughman* court held that a state agency in that case was not a "court" because it lacked the full remedial powers available to a traditionally defined "court" under the Clean Air Act, and because it did not provide the full opportunity for citizen intervention available in "courts" under the Act. The plaintiffs argue that these same considerations apply here: § 309 of the Act (33 U.S.C. § 1319) requires that the EPA seek penalties and injunctive relief in a district court, thus making the agency enforcement action undertaken "inadequate"; and the plaintiffs have not been afforded an opportunity here to intervene before the agency. The court agrees with the plaintiffs that under these circumstances, it would be inappropriate to denominate the EPA a "court" such that a citizen's suit could not be brought. *See also Sierra Club v. SCM Corp.*, 572 F.Supp. 828 (W.D.N.Y.1983) (state agency not a court under the Water Pollution Control Act). The court agrees with the plaintiffs that the Congress intended the citizen suit provision to be a useful supplement to the EPA's enforcement powers and, if necessary, an antidote to agency inaction. Here, the EPA, following notice of suit, has finally begun some enforcement activity after, the plaintiffs allege, some six years of violations. But the May 9 "enforcement order" does not seem calculated to produce the results the plaintiffs seek to bring about. Rather, it seems to be only a preliminary step toward eventual elimination of violations. Thus, this court will not defer to the agency because of its dubious status as a court. The court also notes

that § 505 gives the EPA the right to intervene in any citizen's suit. Should the EPA feel that this suit interferes with its attempts to secure compliance with the Act, it may avail itself of this right.

■ B. Next, the defendant argues that the non-statutory doctrine of primary jurisdiction should serve as a bar to the bringing of this action. The doctrine, like the "final agency action" requirement of the Administrative Procedure Act, is designed to give agencies the first opportunity to decide questions about which they, of the various decision-making bodies, have the greatest competence. Some reasons commonly cited for the doctrine are the necessity for administrative uniformity (as, for example, in the setting of rates); and the need for special skill, commonly to be found only in a body of experts, particularly where intricacies of fact are involved. *See United States v. Radio Corporation of America*, 358 U.S. 334, 346, 79 S.Ct. 457, 464, 3 L.Ed.2d 354 (1959); *Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). This court does not believe that the doctrine is applicable to this case such that jurisdiction ought to be yielded. Uniformity is not at issue here: whatever uniformity the EPA hoped to achieve presumably was expressed through the issuance of permits. Moreover, the agency's special skill went into the setting of pollution limits. This court in this suit is not called upon to itself delve into the complex questions of what quantities of pollutants are safe, or what various industries can be expected to accomplish in reducing pollution. All the court here is called upon to do is compare the allowable quantities of pollution listed in the permits with the available statistics on actual pollution. This comparison seems no more complicated than much other work the court does.

The cases cited by the defendant do not seem to mandate that we yield to the agency. *Loveladies Property Owners Assn. v. Raab*, 430 F.Supp. 276 (D.N.J.1975) merely stands for the proposition that plaintiffs must comply with the technical notice requirements of 33 U.S.C. § 1365. *Sierra Club v. Train*, 557 F.2d 485 (5th Cir.1977)

was a suit brought to compel agency enforcement action. The suit was dismissed since the court ruled that § 1319 enforcement action was discretionary. Here, by contrast, the plaintiffs are not seeking to compel agency action. Rather, not satisfied to rely on the EPA to institute suit, they are bringing suit themselves. Finally, *Montgomery Environmental Coalition v. Washington Suburban Sanitary Comm.*, 607 F.2d 378 (D.C.Cir.1978) is a case where the plaintiffs sought to enjoin the release of pollutants at the very time that NPDES permit proceedings were pending before the EPA. Under that circumstance, the court invoked the doctrine of primary jurisdiction. Here, however, the permit has already been issued, and the plaintiffs merely seek to enforce it. We believe that *Friends of the Earth v. Carey*, 535 F.2d 165 (2d Cir.1976), a case cited by the plaintiffs, furnishes us with proper guidance. That case, under the Clean Air Act, involved citizen action to enforce a state implementation plan. The court ruled that EPA efforts to negotiate consent orders vis-a-vis the plan were not a sufficient reason to dismiss the suit. Rather, the court reminded the EPA of its right to intervene.

The defendant appears to argue that, as in the *Montgomery Environmental Coalition* case, *supra*, there is, in fact, a pending agency action on the permits. This is because, since 1976, the defendant has sought modifications in the pollutant levels authorized by its NPDES permits, including retroactive modifications. The EPA has held these requests in abeyance for seven years. But the plaintiffs are seeking penalties for past violations. The pendency of a modification proceeding does not excuse violations of a permit prior to actual modification: a modification request does not stay existing permit limitations. *See* 40 C.F.R. 124.16(c)(1). *Cf. Menzel v. County Utilities Corp.*, 712 F.2d 91 (4th Cir. 1983) (permit, once issued, will not be applied retroactively to insulate against past violations of the Act). And to the extent the plaintiffs seek prospective relief, such relief is only calculated to secure compliance with the NPDES permits, whatever

their contents. The plaintiffs do not seek to challenge the validity of the modification requests or have the court set pollution limits. Such relief, if sought, might be subject to the doctrine of primary jurisdiction. Here, however, there is no basis for deferring to the EPA.

■ C. Next, the defendant urges dismissal because the plaintiffs lack standing to bring this suit. The court considers this argument entirely devoid of merit. In setting out the standing requirements of citizen suits, the Act defines a "citizen" rather broadly:

[C]itizen means a person or persons having an interest which is or may be adversely affected.

33 U.S.C. § 1365(g). This definition, the legislative history of the Act indicates, is intended to reflect the Supreme Court's definition of standing in *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), a definition allowing that injury may be aesthetic, conversational or recreational, as well as economic. Under the *Sierra Club* case, plaintiffs must demonstrate more than a generalized interest in conservation, however. They must show a connection with the geographical area that is the subject of the suit. *See Loveladies, supra,* at 280; *Pymatuning Water Shed Citizens v. Eaton*, 506 F.Supp. 902 (W.D.Pa.1980), *aff'd*, 644 F.2d 995. An environmental organization whose members are sufficiently affected may sue on their behalf. *Sierra Club, supra; Loveladies, supra.* Here, the allegations of the complaint, which, on a motion to dismiss we must accept as true, establish the requisite interest in the portion of the Delaware River into which the pollutants are placed. Paragraphs 7 and 9 properly allege that members of the two plaintiff organizations "reside in the vicinity of, or own property or recreate in" the portion of the Delaware River into which the defendant discharges pollutants, and that these members are being and will be adversely affected by the discharges with regard to their "health, economic, recreational, aesthetic and environmental interests." These allegations are sufficient to confer standing. The fact that the plaintiff environmental groups may have other members who do not reside along the affected portion of the river does not disqualify the groups from litigating on behalf of their affected members.

■ D. The defendants argue that the complaint should be dismissed for failure to join an indispensable party under Rule 19. It is claimed that this action cannot proceed without the participation of the EPA and the NJDEP. We do not agree.

Rule 19(a) names persons to be joined in an action if feasible. Joinder should be effected where: (1) in a party's absence, complete relief cannot be accorded among the already existing parties; or (2) the party claims an interest in the action such that disposition in his absence may impair his ability to protect that interest, or disposition in his absence may subject existing parties to multiple or inconsistent obligations by reason of his claimed interest. Rule 19(b) states that if a person of the type named above cannot be joined, the court should determine whether the action should proceed in his absence, or whether the action should be dismissed. The court does not believe that the Rule 19(a) circumstances are applicable to the instant case. There is no reason why complete relief cannot be accorded in the absence of the federal and state agencies. Section § 1365 permits the district courts to enforce the provisions of the Act and to impose civil penalties with or without the presence of agencies. Moreover, the court cannot see what interest of the agencies might be impaired by enforcement of the permits they issued, or how the defendant could be exposed to multiple liabilities. The agencies, after all, are not free to condone violations of permits they issued while those permits are still in effect. We again note the right granted the EPA to intervene in any citizen suit (*see* § 1365(c)). Should the EPA feel that its interests will be prejudiced in its absence, it is free to intervene.

For all of the reasons given above, the defendant's motion to dismiss will be denied.

2. *Plaintiffs' Motion for Partial Summary Judgment*

The plaintiffs' motion is a limited one. All the plaintiffs now seek is a declaratory judgment to the effect that between July 1, 1977 (the date when compliance with permits was mandated) and September 12, 1983, the defendant operated its Bridgeport facility in violation of the terms and conditions of its NPDES permit, and that such activity was in violation of sections 1311 and 1342 of the Act. This present motion does *not* seek injunctive relief, civil penalties, or costs, including attorneys' fees.

The plaintiffs' argument in support of its motion is a very basic one. The materials submitted by the parties indicate that the EPA issued to the defendant an NPDES permit on November 21, 1974. On July 18, 1975, the EPA and the defendant entered into a stipulation under which certain terms and conditions of the permit were modified. This permit expired January 31, 1980 but remains in effect by operation of law. *See* 40 C.F.R. 122.6. On March 6, 1981, the New Jersey Department of Environmental Protection, having been authorized to assume responsibility for the permit program, issued a NJPDES permit which authorized the defendant to continue its discharges in accordance with the previously issued NJDES permit. The permits require the defendant to submit monthly discharge monitoring reports (DMRs) and non-compliance Reports (NCRs) within five days of the defendant's becoming aware of non-compliance with the permit standards. The plaintiff has furnished us with these reports and shown the court 234 instances where the defendant exceeded the discharge limits permitted. (*See* Exhibits attached to Affidavit of Carolyn Smith.) Each such instance violates 33 U.S.C. §§ 1311 and 1342 and makes the defendant subject to civil penalties (*see* 33 U.S.C. §§ 1319, 1365). The plaintiff submits that the information presented above contains no genuine issues of material fact.

 Regarding entitlement to judgment as a matter of law, the plaintiffs put forth the following arguments, all of which we accept:

Reports or records which are required to be kept by law (such as the DMRs and NCRs) may be used as admissions to establish a defendant's civil liability. *See United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).

Summary judgment is appropriate on the issue of liability for violations of the Act. *See United States v. Velsicol Chemical Corp.,* 438 F.Supp. 945 (W.D.Tenn.1976), particularly since NPDES enforcement actions are based on strict liability, thus making intent and good faith irrelevant to the issue of liability. *See United States v. Earth Sciences, Inc.,* 599 F.2d 368, 374 (10th Cir.1979); *United States v. Texas Pipe Line Co.,* 611 F.2d 345 (10th Cir.1979).

The defendant has put forth a variety of factual and legal defenses to the summary judgment motion.

The defendant again raises the issue of the plaintiffs' standing to bring this suit. Since this issue now comes up on the plaintiffs' summary judgment motion, rather than on defendant's motion to dismiss, we may not assume the truth of allegations contained in the complaint. However, the plaintiffs' affidavits and answers to interrogatories (*see* plaintiffs' appendix III) do set forth facts sufficient to confer standing on the plaintiff organizations.

The defendant again raises the question of jurisdiction in light of the recent enforcement action of the EPA. But, as we have indicated above, the EPA's action is not directed toward the imposition of civil penalties for past violations, the subject of this motion. Rather, the EPA's action is calculated to secure future compliance with the permits. Since, as a matter of law, we do not regard the EPA action as within the "diligent prosecution" provision of 33 U.S.C. § 1365, we reject the defendant's argument on this issue.

 Next, the defendant raises the question of the effect of its request for permit modification on its obligation to meet its NPDES permit limitations. The defendant first made a request for permit modification on November 15, 1976. (The request

was based on the defendant's belief that its facility was built in accordance with the Best Practical Technology Currently Available (BPT) standards mandated by the Act, and that the existing NPDES permit limitations were too stringent. The permit, issued prior to the EPA's issuance of BPT guidelines, had been based on the EPA's best engineering judgment of what the Act required, rather than on BPT limitations later developed.) By the spring of 1977, the EPA told the defendant that its request for a hearing on modification would be held in abeyance pending the submission of additional data. This communication from the EPA did *not* state that the permit standards were being held in abeyance, only that the request for modification was being stayed. Six years passed. Finally, in 1983, the defendant renewed its request for permit modification, including retroactive modification. The defendant maintains that in view of the possibility of retroactive modification, and in view of its uncertain obligations between 1977 and 1983, summary judgment is inappropriate.

This issue also may be resolved as a matter of law. The question is: does the correspondence between defendant and the EPA serve to absolve the defendant of liability for violations of the permits which have continuously been in effect since 1975? The court believes the answer is No. We have indicated earlier in this opinion that permit requirements are *not* stayed pending a modification hearing, and that modifications are not applied retroactively. Furthermore, there is authority to indicate that NPDES permits based on best engineering judgment are as enforceable as permits based on BPT limitations. *See United States v. Cutter Laboratories, Inc.,* 413 F.Supp. 1295 (E.D.Tenn.1976). Accordingly, we believe the defendant's contention to be without merit. As stated earlier, strict liability attaches to permit violations. The defendant's argument is more appropriately addressed to the question of the penalties to be assessed, an issue not before the court here.

█ The defendant next argues that summary judgment is unwarranted because most of the permit violations oc-

curred before January 1, 1982 (205 of 234), and that the citizen suit provisions of the Act were primarily intended to effectuate prospective relief. It is contended that suits to exact penalties for past violations should be left to the Government. The plain language of 33 U.S.C. § 1365 indicates, however, that civil penalties may be assessed in citizens suits under the Act. The cases the defendant has submitted (*e.g., Love v. N.Y. State Department of Environmental Conservation,* 529 F.Supp. 832 (S.D.N.Y.1981)) do not stand for the proposition that civil penalties are unavailable under § 1365. Rather, those cases merely deny a private right of action for damages to plaintiffs in citizen suits.

█ The defendant next argues there is an issue as to whether prospective relief is justified in view of its improved compliance with the permit limitations. This is correct but is beyond the scope of plaintiffs' motion. The defendant further urges that the EPA's handling of the request for permit modification may estop the agency and, hence, the plaintiffs, from claiming permit violations. But the regulations promulgated pursuant to the Act (*see* 40 C.F.R. § 124.16) estop the defendant from claiming reliance on the agency's conduct and from claiming that its permit obligations were uncertain. The remaining contentions regarding the total suspended solids parameter of the permit are also not meritorious. The defendant's own reports indicate excessive discharges. The affidavit of an employee of Monsanto Company that the discharges were not toxic and presented no harm to the public is beside the point. The defendant must comply with the NPDES permit, which presents the EPA's judgments concerning toxicity.

The court is cognizant of improvements the defendant has managed to achieve over the last several years. But Congress, and the EPA, in promulgating regulations based on its understanding of congressional intent, has chosen to give lower priority to this factor in order to promote a healthy environment. The defendant's concerns may be properly dealt with at a hearing to assess relief. The plaintiffs' motion for summary judgment will be granted.

An order consistent with this opinion has been entered.