PUBLIC INTEREST RESEARCH
GROUP OF NEW JERSEY,
et al., Plaintiffs,

v.

STAR ENTERPRISE, et al., Defendants.

Civ. No. 89–5370 (CSF).

United States District Court,
D. New Jersey.

July 18, 1991.

Terris, Pravlik & Wagner by Bruce J. Terris, Mark V. Dugan, Washington, D.C., Edward Lloyd, Newark, N.J., for plaintiffs.

Carpenter, Bennett & Morrissey by Louis M. DeStefano, Jennifer L. Kapell, Newark, N.J., for defendant Star Enterprise.

## OPINION

CLARKSON S. FISHER, District Judge.

Before the court is the motion of the plaintiffs, Public Interest Research Group of New Jersey ("NJPIRG") and Friends of the Earth ("FOE"), for partial summary judgment on the issue of the liability of defendant Star Enterprise ("Star") and for permanent injunctive relief. Also before the court is Star's cross-motion for summary judgment or, alternatively, a stay. For the reasons set forth below, the court will grant plaintiffs' motion for partial summary judgment and permanent injunctive relief and will deny defendant's cross-motion.

## FACTS

NJPIRG and FOE are non-profit corporations that share an interest in the protection and improvement of the quality of water in New Jersey. Seeking to protect the interests of their members in the quality of Newark Bay and tidally-related waters, including the Kill Van Kull, the Arthur Kill, the Upper and Lower New York Bays, the Raritan Bay, the Sandy Hook Bay, and the Passaic River, plaintiffs have brought this action.

Star is a 50–50 partnership between Saudi–Refining, Inc. and defendant Texaco Refining and Marketing Inc. ("Texaco Refining"). On December 31, 1988, Texaco Refining transferred a petroleum marketing terminal located in Newark, New Jersey, to Star, which Star has operated since that date. The discharges from this terminal into Newark Bay are the subject of this suit.

In 1973, the United States Environmental Protection Agency ("EPA") issued National Pollutant Discharge Elimination System permit number NJ 0002160 to Texaco Refining. The permit authorized certain discharges into Newark Bay from the terminal. On August 1, 1979, a renewal discharge permit for the Newark terminal issued by the EPA took effect. This permit expired on July 31, 1984.

On April 13, 1982, the EPA delegated responsibility to the New Jersey Department of Environmental Protection ("NJDEP") for administering the National Pollutant Discharge Elimination System ("NPDES") program in New Jersey. *See* 33 U.S.C. 1342)(a)–(b). On June 27, 1988, the NJDEP, pursuant to the authority delegated to it by the EPA and to section 58:10A–6 of the New Jersey Water Pollution Control Act, N.J.Stat.Ann. 58:10A–1 to :10A–20, issued a new permit under the New Jersey Pollutant Discharge Elimination System ("NJPDES") to Texaco Refining. This permit took effect on August 1, 1988. On July 25, 1988, Texaco Refining filed a request for an adjudicatory hearing on the validity of the NJPDES permit. A hearing is currently pending.

By letter dated October 23, 1989, plaintiffs notified Star, the EPA and NJDEP of their intent to bring suit within sixty days for alleged violations of the NJPDES permit, as required under 33 U.S.C. § 1365(b). Prior to the expiration of the sixty-day period, on December 21, 1989, the NJDEP issued to Star an Administrative Order and Notice of Civil Administrative Penalty Assessment ("Order and Notice"). The Order and Notice directed Star to immediately cease discharging in alleged violation of the NJPDES permit limitations and sought to assess a penalty of $704,000.00 against Star.

On December 27, 1989, Star ceased discharging effluent into the Newark Bay in order to comply with the cease and desist provision of the Order and Notice. Star filed a timely request for a hearing on the validity of the Order and Notice. A hearing on this issue has not yet been scheduled.

Star has selected new wastewater treatment equipment to bring its discharges within permit limitations. Affidavit of John F. Love ¶ 9 (filed Feb. 4, 1991). Star

alleges that once operational, the treatment technology will meet all permit limitations, with the possible exception of the restriction imposed on the level of chemical oxygen demand ("COD"). *Id.* ¶ 11. Unable to determine whether a treatment technology exists that will reduce COD to the levels provided in the permit, Star has initiated dialogue with the NJDEP concerning a possible modification of the COD limitation. *Id.* ¶ 12. Star has filed an application with the NJDEP for a treatment works permit and is awaiting official authorization from that agency in order to bring the equipment on line. *Id.* ¶ 11.

On December 26, 1989, plaintiffs filed this lawsuit, seeking to hold Star liable for 104 violations of the discharge limitations in its permit that allegedly occurred in 1989. Plaintiffs also allege eight violations of the reporting requirements of the permit, asserting that Star reported violations on the Discharge Monitoring Reports (DMR's), but underreported the severity of the violations and the total number of the violations. Plaintiffs therefore request a declaratory judgment that defendants have violated and continue to violate the Federal Water Pollution Control Act ("the Act"), 33 U.S.C. §§ 1311, 1318, 1342; an injunction prohibiting the defendants from operating the terminal in such a manner as will result in the further violation of the permit; an order requiring defendants to comply with all terms and conditions of the permit; an order requiring defendants to provide plaintiffs with a copy of all monitoring results required to be submitted to federal or state authorities at the time they are submitted for the period extending from the date of the order to one year after the defendants come into compliance with the permit; an award of civil penalties for each violation of the permit; and an award of costs, including attorneys' and experts' fees.

## ANALYSIS

In 1972, Congress deemed the objective of the Act to be "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Among other things, "the Act makes unlawful the discharge of any pollu-

tant into navigable waters except as authorized by specified sections of the Act. 33 U.S.C. § 1311(a)." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52, 108 S.Ct. 376, 379, 98 L.Ed.2d 306 (1987). For example, pursuant to section 402 of the Act, "the Administrator of the Environmental Protection Agency ("EPA"), or a state which has established its own EPA-approved permit program, may issue a permit allowing effluent discharges in accordance with specified conditions. 33 U.S.C. § 1342(b), (c)." *Natural Resources Def. Council, Inc. v. Texaco Refining & Marketing Inc.*, 906 F.2d 934, 935 (3d Cir.1990).

An entity which holds an EPA-issued NPDES permit "is subject to enforcement action by the Administrator [of the EPA] for failure to comply with the conditions of the permit." *Gwaltney*, 484 U.S. at 52–53, 108 S.Ct. at 379. Entities holding state-issued permits are subject to both state and federal enforcement action for failure to comply. *Id.* at 53, 108 S.Ct. at 379. In the absence of state or federal enforcement, private citizens may, upon complying with certain notice provisions, file suit. *Id.*

Pursuant to section 505 of the Act, private citizens may commence civil actions against any entity "alleged to be in violation of" the conditions of either a federal or state permit. 33 U.S.C. § 1365(a)(1). In this citizen suit, plaintiffs allege that the defendants have repeatedly discharged pollutants from their terminal into Newark Bay in violation of the terms of their effluent limitations permit. Plaintiffs now seek partial summary judgment as to Star's liability and permanent injunctive relief.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Brown v. Hilton*, 492 F.Supp. 771, 774 (D.N.J.1980). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S.

1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This "burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court, however, is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

In opposition to plaintiffs' motion for summary judgment, Star asserts that this court is without subject matter jurisdiction, that the plaintiffs lack standing to bring this action, that the action is moot, that the motion is premature, that plaintiffs have miscalculated the number of Star's alleged violations and that permanent injunctive relief is not appropriate. Star has also cross-moved for summary judgment, or alternatively, a stay.

### A. Subject Matter Jurisdiction

■ Star asserts that because it stopped discharging before being served with the complaint in this action, this court is without jurisdiction over the claims asserted against it under *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

Under the Act, a citizen may bring an action in federal court against any person "alleged to be in violation of" an effluent limitation contained in a permit issued by a state. 33 U.S.C. § 1365(a). In *Gwaltney,* the Supreme Court considered Congress' use of the words "to be in violation" and held that the Act did not confer federal jurisdiction over citizen suits for wholly past violations. 484 U.S. at 59, 108 S.Ct. at 382. In order for subject matter jurisdiction to exist, the Court reasoned, a plaintiff must allege in good faith that a defendant is in either "continuous or intermittent violation" of its permit. *Id.* at 64, 108 S.Ct. at 385. An intermittent violator is one who has violated its permit in the past and is reasonable likely to continue to pollute in the future. *Id.* at 57, 108 S.Ct. at 381.

In a complaint filed on December 26, 1989, plaintiffs alleged that Star violated the Act numerous times and would continue to do so. Complaint ¶¶ 17–18. Star does not assert that plaintiffs lacked good faith when they made these allegations in their complaint. Instead, Star notes that on December 27, 1989, it ceased discharging effluent, and because it did so before being served with the complaint in this action, this court is without jurisdiction. However, the date of service of process is irrelevant. In order to determine whether there is jurisdiction, this court must examine the circumstances existing as of the date of the filing of the complaint. *Gwaltney,* 484 U.S. at 64, 108 S.Ct. at 385 (at "commencement of suit," defendant must be alleged to be in violation of Act for jurisdiction to exist); *Atlantic States Legal Found., Inc. v. Tyson Foods,* 897 F.2d 1128, 1133 (11th Cir.1990) (for jurisdictional purposes, a good faith allegation that "violations ... continued at the time the suit was filed" is sufficient); *see also Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.,* 890 F.2d 690, 693 (4th Cir.1989) (at trial, plaintiff must prove that continuing violations existed " 'on or after the date the complaint [was] filed' "); *Sierra Club v. Union Oil Co.,* 853 F.2d 667, 671 (9th Cir.1988).

Moreover, the Supreme Court has stressed that the Constitution does not re-

quire plaintiffs to offer proof to support their allegation of fact in order to invoke the jurisdiction of a federal court. *Gwaltney*, 484 U.S. at 66, 108 S.Ct. at 386. Therefore, because Star has failed to establish that plaintiffs lacked good faith when they alleged on December 26, 1989, that defendant violated its permit and would continue to violate its permit after the filing of the complaint, this court concludes that it has jurisdiction over this matter.

### B.  Standing

Star asserts that plaintiffs are without standing to bring this suit. Under Article III of the Constitution, federal courts may resolve only actual cases or controversies. U.S. Const. art. III, § 2. If a party "has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy, ..." it has standing to sue. *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1972). This requirement of a "personal stake" in the outcome of the controversy aids the court by assuring the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Larson v. Valente*, 456 U.S. 228, 238–39, 102 S.Ct. 1673, 1680, 72 L.Ed.2d 33 (1982).

In *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), the Court articulated a test for determining whether a party has the requisite "personal stake" in the outcome:

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," ... and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision" ...

*Id.* (citations omitted).

In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), the Supreme Court held that an association has standing to sue on behalf of its members "when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *See also New York State Club Ass'n v. City of New York*, 487 U.S. 1, 9, 108 S.Ct. 2225, 2232, 101 L.Ed.2d 1 (1988); *Sierra Club*, 405 U.S. at 739, 92 S.Ct. at 1368 (organization whose members are sufficiently affected may sue on their behalf).

The first question this court must resolve then is whether, under the test set forth in *Valley Forge*, the members of plaintiffs' organizations have a sufficient connection to this dispute such that they would have standing to sue in their own right. *See Public Interest Res. Group v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 70–71 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Star argues that plaintiffs have not alleged an injury sufficient to confer standing nor an injury that is fairly traceable to Star's conduct.

### 1.  Injury-in-Fact

Under the Act, "any citizen may commence a civil action." 33 U.S.C. § 1365(a). A "citizen" is "a person or persons having an interest which is or may be adversely affected." *Id.* § 1365(g).

The Court has determined that cognizable injury can implicate environmental, aesthetic or recreational as well as economic interests. *Sierra Club*, 405 U.S. at 734, 92 S.Ct. at 1365–66. But injury-in-fact requires more than an injury to a cognizable interest; plaintiffs' members may not simply assert a generalized interest in the conservation of natural resources. *Id.* at 734–35, 92 S.Ct. at 1366–67; *Lujan v. National Wildlife Fed'n*, —— U.S. ——, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). In order to be considered among the injured, plaintiffs' members must show a connection with the geographical area that is the subject of the suit. *Sierra Club*, 405 U.S.

at 734–35, 92 S.Ct. at 1365–66; *Lujan,* 110 S.Ct. at 3189.

The complaint must properly allege that the members of the plaintiff organizations reside in the vicinity of, own property near, or recreate in or near the body of water into which the defendant discharges pollutants, and that the health, economic, recreational, aesthetic or environmental interests of these members are being and will be adversely affected by the discharges. *See Powell Duffryn,* 913 F.2d at 71; *Natural Resources Def. Council, Inc. v. Outboard Marine Corp.,* 692 F.Supp. 801, 807 (N.D.Ill.1988); *Student Pub. Interest Res. Group v. Monsanto Co.,* 600 F.Supp. 1479, 1484 (D.N.J.1985).

In their complaint, plaintiffs allege that their members reside or work near the Newark Bay or tidally-related waters. Complaint ¶ 8. The complaint further alleges that the quality of these waters is adversely affected by defendant's discharges in violation of the terms and conditions of its permit and that defendant's excessive discharges directly affect the health, economic, recreational, aesthetic and environmental interests and well-being of plaintiffs' members. *Id.* ¶¶ 8, 11. In support of these allegations, the plaintiffs have submitted the affidavits of six individuals, two of whom are members of NJPIRG and four of whom are members of FOE.

These individuals attest that they walk, hike, jog, roller skate, bike, windsurf, boat, swim, birdwatch, play tennis or softball on or near the Newark Bay or tidally-related waters. The affiants claim injury to their aesthetic and recreational interests because of the pollution of these waters. All of the affiants complain of the foul smell or appearance of the waterways, and all of the affiants would not knowingly eat fish from these waterways because of their concern that doing so may be hazardous to their health.

In his affidavit, William S. Robertson describes how the pollution in these waters affects his interests. Mr. Robertson lives in Montclair, New Jersey, and is a member of FOE. Plaintiffs' Brief in Support exhibit 8, Affidavit of William S. Robertson ¶¶ 1, 2. He frequently windsurfs in Sandy Hook Bay, an activity that necessarily involves falling into and swimming in the water. *Id.* ¶ 3. He attests that he would like to be able to windsurf in waters closer to his home, such as the Newark Bay, the Arthur Kill, the Kill Van Kull, or the Upper New York Bay, but he does not because of their polluted state. *Id.* ¶ 4. Mr. Robertson also does not recreate directly in or near the Arthur Kill, Newark Bay or Kill Van Kull because they contain pollution and are foul in smell and appearance. *Id.* ¶ 6. Finally, because Mr. Robertson does not know how much pollution is in these waterways, he will not knowingly eat fish caught from these waters. *Id.* ¶ 8.

The court concludes that the pollution in the Newark Bay and tidally-related waters has interfered with the enjoyment of this natural resource by the members of NJPIRG and FOE. The harm to the aesthetic, recreational and environmental interests of these affiants is an injury sufficient to satisfy the requirements of Article III. *Sierra Club,* 405 U.S. at 734–35, 92 S.Ct. at 1365–66; *Powell Duffryn,* 913 F.2d at 71. Therefore, the plaintiffs' members have satisfied the first part of the *Valley Forge* test.

#### 2. "Fairly Traceable"

Star contends that plaintiffs cannot meet the second requirement of the *Valley Forge* test because they cannot demonstrate that the injuries suffered by their members are fairly traceable to Star's alleged violations of its permit. But plaintiffs' members need not show to a scientific certainty that defendant's effluent alone caused the precise harm they have suffered; in order to satisfy the "fairly traceable" requirement, plaintiffs' members need only show that there is a substantial likelihood that defendant's conduct caused their harm. *Powell Duffryn,* 913 F.2d at 72.

The Court of Appeals for the Third Circuit has determined that this likelihood may be established by showing that a defendant has 1) discharged some pollutant in concentrations greater than allowed by its

permit 2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that 3) this pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs. *Id.*

■ In this case, at least three affiants have described the appearance of Newark Bay as "opaque" and "brown" or "black." *See* Plaintiffs' Brief in Support exhibit 11, Affidavit of Elizabeth McLaughlin ¶ 5; *Id.* exhibit 12, Affidavit of Douglas MacNeil ¶ 4; Plaintiffs' Brief in Opposition exhibit 15, Second Affidavit of Edwin Matthews ¶ 3. The EPA has found that the total suspended solids ("TSS") or turbidity decreases visibility of the water. Plaintiffs' Brief in Opposition exhibit 17, EPA, *Quality Criteria for Water* at 405 (1976) [hereinafter EPA Report I]. The permit contained limits on the TSS or turbidity that Star could discharge. Star's reports to the NJDEP indicate that it discharged in excess of those limitations. Plaintiffs' Reply Brief exhibit 21.

One of the affiants, Andrew Gerbino, stated that the water of Newark Bay contains "oil slicks and grease pockets." Plaintiffs' Brief in Support exhibit 9, Affidavit of Andrew Gerbino ¶ 5. The EPA has found that petroleum products may remain insoluble. The permit contained limits on the petroleum hydrocarbons ("PHC") Star could discharge. Star's reports to the NJDEP indicate that it discharged in excess of those limitations. Plaintiffs' Reply Brief exhibit 21.

Three affiants also allege that odor of the waters is unpleasant. Plaintiffs' Brief in Support exhibit 11, ¶ 4; *Id.* exhibit 12, ¶ 4; Plaintiffs' Brief in Opposition exhibit 15, ¶ 3. The EPA has found that PHC, benzene, toluene and xylene contribute to the chemical odor of water. EPA Report I at 210. The permit contained limits on the PHC and toxic pollutants Star could discharge. Star's reports to the NJDEP indicate that it discharged in excess of those limitations. Plaintiffs' Reply Brief exhibit 21.

All of the affiants state their concern about the unhealthful effects of pollution on humans who might recreate in Newark Bay. *See, e.g.,* Plaintiffs' Brief in Support exhibit 11, ¶ 9; *Id.* exhibit 12, ¶ 7; Plaintiffs' Brief in Opposition exhibit 14, ¶ 7. The EPA has found that PHC, benzene, toluene, xylene and TSS pose risks to human health. EPA Report I at 210–21, 405. As noted above, Star has discharged these pollutants in excess of the limitations contained in its permit.

Finally, all of the affiants state that they would not eat fish caught in the Bay because of their concern of the effect of pollution on the fish. *See, e.g.,* Plaintiffs' Brief in Support exhibit 11, ¶ 9; *Id.* exhibit 12, ¶ 7; Plaintiffs' Brief in Opposition exhibit 14, ¶ 7. The EPA has found that COD, TSS and benzene and toluene harm aquatic life. Plaintiffs' Brief in Opposition exhibit 18, EPA, *Quality Criteria for Water* at 1–3 (1986). Star has discharged effluent containing levels of these chemicals that were in excess of permit limits. Plaintiffs' Reply Brief exhibit 21.

For all of these reasons, this court concludes that plaintiffs' members have established a substantial likelihood that Star's discharge of these pollutants in excess of permit restrictions caused their harm. Consequently, plaintiffs' members have met the "fairly traceable" requirement under *Valley Forge.*

### 3. Redressability

■ In order to meet the final part of the *Valley Forge* test, plaintiffs must demonstrate that their injuries are "likely to be redressed by a favorable decision." Star does not argue that plaintiffs are unable to meet this requirement. Instead, it asserts that because the first part of the *Valley Forge* test is not met, neither is the third. As discussed above, however, the plaintiffs have demonstrated injury-in-fact.

Moreover, the third requirement focuses on the connection between the injury suffered by plaintiffs' members and the judicial relief sought. An injunction will redress the injuries of which plaintiffs' members complain. If Star complies with the injunction, the harm to water quality will

be redressed, because the pollution in the Newark Bay will decrease. *Powell Duffryn*, 913 F.2d at 73. Civil penalties will also redress the injuries complained of by the plaintiffs' members because of the deterrent effect of an award of civil penalties on Star and other NPDES permit holders. *Id.*

Therefore, the members of the plaintiff organizations have successfully established that they have suffered injury, that their injury is fairly traceable to the defendant's conduct and that the judicial relief sought will redress their injury, as required under *Valley Forge.*

In order to have standing to sue on behalf of their members under *Hunt*, plaintiffs must also demonstrate that the interests sought to be protected are germane to their purpose and that individual participation by their members is not necessary to maintain this action. 432 U.S. at 343, 97 S.Ct. at 2441. In their complaint, plaintiffs note that their organizations are dedicated to protecting the environmental, aesthetic or recreational interests of their members in the quality of the waters of New Jersey. Complaint ¶¶ 6–11. Moreover, the nature of the claims and of the relief sought does not make the individual participation of each injured member of those associations indispensable to the proper resolution of this case.

For all of these reasons, then, this court concludes that plaintiffs have standing to sue on behalf of their members.

## C. Mootness

In this action, NJPIRG and FOE seek relief in the form of an injunction and civil penalties, among other things. Star contends that this action is moot under *Gwaltney* because it has ceased discharging into the Newark Bay and has installed additional treatment technologies designed to decrease the concentration of contaminants in its discharge to permissible levels, with the possible exception of COD.

The voluntary cessation of allegedly illegal conduct does not deprive a tribunal of power to hear and determine the case. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303

(1953); *see also United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). But if the defendant can carry the heavy burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated," the case may be moot. *Grant*, 345 U.S. at 633, 73 S.Ct. at 897.

As noted above, the Court in *Gwaltney* discussed the threshold requirements for subject matter jurisdiction under the Act. In the context of that discussion, the Court opined:

> Longstanding principles of mootness ... prevent the maintenance of suit when " 'there is no reasonable expectation that the wrong will be repeated.' " In seeking to have a case dismissed as moot, however, the defendant's burden is a heavy one. The defendant must demonstrate that it is *"absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." Mootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanctions by predictable "protestations of repentance and reform."

*Gwaltney*, 484 U.S. at 66–67, 108 S.Ct. at 386 (citations omitted) (emphasis in original).

### 1. Injunctive Relief

■ Because the purpose of an injunction is to prevent future violations, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. *Grant*, 345 U.S. at 633, 73 S.Ct. at 897–98. In this case, Star argues that plaintiffs' request for an injunction is moot. But in order to show that this is so, Star must demonstrate that there is no reasonable likelihood that it will violate the permit in the future. This it is unable to do. Star's new equipment is not yet operational. Moreover, Star admits that it cannot assure this court that once the equipment is fully operational, the discharge produced will

comply with all of the limitations in the permit.

The court notes that even if Star could offer such assurances, the case would not necessarily then become moot. *See Phosphate Export*, 393 U.S. at 203, 89 S.Ct. at 364. "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Medical Soc'y*, 343 U.S. 326, 333, 72 S.Ct. 690, 696, 96 L.Ed. 978 (1952). Because Star has not been able to establish that violations of its permit cannot be reasonably expected to recur and that it is entitled to a dismissal as a matter of right, the court finds that plaintiffs' request for injunctive relief is not moot.

### 2. Civil Penalties

■ Under the Act, civil penalties attach as of the date a permit violation occurs. 33 U.S.C. § 1319(d). In *Gwaltney*, the Court concluded that citizens may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation. *Id.* 484 U.S. at 59, 108 S.Ct. at 382. But in order to maintain a suit for civil penalties, the plaintiffs must go beyond mere allegations. Plaintiffs must be able to prove that non-compliance was ongoing at the time they filed suit in order to be able to later maintain an action for civil penalties. *Atlantic States*, 897 F.2d at 1134; *Chesapeake Bay Found.*, 890 F.2d at 693.

In order to prove an ongoing violation, plaintiffs must demonstrate either (1) that violations continued on or after the date the complaint was filed or (2) that a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations. *Chesapeake Bay Found.*, 890 F.2d at 696; *Atlantic States*, 897 F.2d at 1134.

■ In this case, it is not entirely clear whether any violations occurred on December 26, 1989, the date the complaint was filed, or on December 27, 1989, the date that Star ceased discharging. Nevertheless, this court finds that as of December 26, 1989, there was a reasonable likelihood that Star would continue to pollute in the future.

Plaintiffs have submitted a "Revised Chronological Listing of Effluent Violations," which indicates that during every month of the year of 1989, Star polluted in violation of its permit. Plaintiffs' Reply Brief exhibit 21. This compilation also reveals that during the time period beginning on January 13, 1989, and ending on December 15, 1989, Star committed 104 violations of its permit. *Id.* Star admits that it did not cease discharging until December 27, 1989, and did so in order to comply with the cease and desist provision of the Order and Notice. For this reason, the court concludes that as of December 26, 1989, a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent violation.

■ Therefore, plaintiffs have carried their burden of demonstrating an ongoing violation. This court is obligated to assess penalties once that has occurred. *Chesapeake Bay Found.*, 890 F.2d at 697. Further, once plaintiffs have proven an ongoing violation and there is an assessment of civil penalties, a citizen action cannot become moot. *Id.* For these reasons, the court finds that plaintiffs' request for civil penalties is not moot.

### D. Prematurity

Star argues that this motion for summary judgment is premature and as such should be denied. Rule 56 provides that

A party seeking to recover upon a claim ... or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action ... move with or without supporting affidavits for a summary judgment....

The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(a), (c).

Star does not assert that the motion was filed before permitted under this rule, or that more discovery is required before the court can properly determine whether there is a genuine issue as to any material fact in this action or whether one of the moving parties is entitled to judgment as a matter of law. Instead, Star asserts that plaintiffs must wait for the NJDEP to rule on the validity of the permit at issue and for any and all subsequently filed appeals to be resolved before their motion for summary judgment may be heard. In essence, then, Star requests a stay of plaintiffs' action pending those determinations. This request will be discussed below.

### E. Stay

Plaintiffs' claims are predicated upon the NJPDES permit. The validity of that permit is at issue in a challenge initially brought by Star's predecessor before an administrative agency. Star argues, therefore, that the doctrine of primary jurisdiction requires this court to stay these proceedings or, in the alternative, that the court should stay this action in the interest of wise judicial discretion.

The primary jurisdiction doctrine is principally concerned with the timing of judicial review of matters entrusted to the discretion and expertise of administrative agencies. *Outboard Marine*, 692 F.Supp. at 809. Where enforcement of a claim requires resolution of an issue that has been placed within the special competence of an administrative body and the claim is properly before that administrative body, a court should defer ruling until those matters before the administrative agency have been resolved. *See Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 305, 93 S.Ct. 573, 582, 34 L.Ed.2d 525 (1973); *United States v. Western Pac. RR.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956).

This doctrine is designed to give agencies the first opportunity to decide questions about which they, of the various decision-making bodies, have the greatest competence. *Monsanto*, 600 F.Supp. at 1483. This doctrine is inapplicable here.

In this case, the NJDEP has issued a permit. Plaintiffs seek to enforce it. To determine whether Star has violated its permit, this court will have no need to resolve issues "within the special competence" of NJDEP. *See Outboard Marine*, 692 F.Supp. at 809; *Monsanto*, 600 F.Supp. at 1479. The court will not be called on to set, modify or revoke the effluent limits governing Star or to consider technical issues rightly left to the NJDEP. The NJDEP has already exercised its regulatory role by determining the effluent restrictions. This court is now required to enforce the standards NJDEP has determined are appropriate. This involves no encroachment on NJDEP's areas of expertise.

In the alternative, Star asks this court to refrain from exercising its jurisdiction in the interest of judicial discretion. Star asserts that because the resolution of the issues before the administrative tribunal will have a direct impact upon this action, the court should stay these proceedings.

The federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910). Nevertheless, in rare instances, a federal court may surrender its jurisdiction when "considerations of [w]ise judicial administration, giving regard to [the] conservation of judicial resources and comprehensive disposition of litigation" so dictate. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. The Supreme Court held in *Colorado River* that only when "exceptional" circumstances exist, and only upon "the clearest of justifications," may a federal court stay or dismiss an action when there is a concurrent state proceed-

ing. *Id.* at 818, 819, 96 S.Ct. at 1246, 1247; *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). The test for a stay or dismissal under *Colorado River* is stringent because

> [w]hen a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. at 943 (citations omitted).

To determine whether the "exceptional circumstances" test of *Colorado River* is met, a federal court must carefully consider the assumption of jurisdiction over property; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was first obtained. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47. The Supreme Court added two other considerations to this list in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In ascertaining whether it should refuse jurisdiction, a federal court may also consider whether federal law will decide the action on its merits, and whether the state court proceeding will adequately protect the rights of the federal court plaintiff. *Id.* at 23, 26, 103 S.Ct. at 941, 942. With the balance heavily weighted in favor of the exercise of jurisdiction, a federal court must carefully consider whether a balance of these factors justifies refraining from exercising jurisdiction. *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

Star has identified no concurrent, parallel state proceeding. The proceedings before the administrative tribunal concern Star's claim that the NJDEP failed to follow fundamental administrative procedures when it issued the permit. This failure, Star asserts, deprived Star of an opportunity for meaningful review and comment and rendered the permit invalid. Star's Brief in Opposition at 12. A citizen plaintiff suit under the Act is not and could not be before that tribunal. Moreover, Star admits that the validity of the permit is not and could not be before this court. Star's Brief in Opposition at 15–16. Therefore, the proceedings are not parallel.

In addition, Star does not address any of the factors required to be taken into consideration under *Colorado River*. Star does not contend that there has been an assumption of jurisdiction over property, nor does it contend that the federal forum is inconvenient. Star does not contend that piecemeal litigation will result, nor that the administrative tribunal obtained jurisdiction over this matter first. Star does not argue that federal law will decide the administrative action on its merits, nor does it concern itself with whether the administrative action can adequately protect the rights of NJPIRG and FOE. For these reasons, the court concludes that the balance of factors under *Colorado River* remains firmly entrenched in favor of jurisdiction.

█ Nevertheless, Star asserts that it is entitled to a stay in the interest of fairness. Star asks that it not be put to the expense of litigating in this forum before the administrative challenge and any subsequently filed appeals are resolved. Star also argues that because it has ceased the allegedly offensive discharges and has taken substantial measures to bring its discharges within permit levels, plaintiffs will not be prejudiced by the issuance of a stay.

The Court of Appeals for the Ninth Circuit has determined that:

> [a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the is-

sues in such proceedings are necessarily controlling of the action before the court.

*Mediterranean Enters., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir.1983) (quoting *Leyva v. Certified Grocers,* 593 F.2d 857, 864 (9th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979)); *see also Bechtel Corp. v. Local 215,* 544 F.2d 1207, 1215 (3d Cir.1976).

This court does not agree that the "fairest course" of action would be to stay this matter. There is a clear federal policy militating against a stay. In the related context of the Clean Air Act, the Supreme Court has stated that a request for a variance "is carried out on the polluter's time, not the public's." *Outboard Marine,* 692 F.Supp. at 811 (quoting *Train v. Natural Resources Def. Council, Inc.,* 421 U.S. 60, 92, 95 S.Ct. 1470, 1488, 43 L.Ed.2d 731 (1975)). In this case, the court finds that there is no reason to permit Star's administrative challenge to be carried out on the public's time. The fairest course of action for this court to take would be to fulfill the obligation Congress has imposed upon it to enforce all permit restrictions that are in effect. The possibility that, at some point in the future, the permit may be deemed invalid cannot serve to abrogate that present duty. That possibility may be taken into account when the time comes for assessing penalties for past violations. *Outboard Marine,* 692 F.Supp. at 811; *see also Monsanto,* 600 F.Supp. at 1486 (holding a pending modification request is more appropriately addressed at the penalty stage).

Because the primary jurisdiction doctrine is not applicable in this action, because Star has failed to demonstrate that the balance of factors enumerated in *Colorado River* weighs in favor of a stay and because the court finds that its interest in fairness requires these proceedings to continue, the court will deny Star's request for a stay.

### F. Summary Judgment on Star's Liability

■■■ Star asserts that plaintiffs' calculation of the number of alleged violations is in error. First, Star argues that the plaintiffs have erroneously assumed that a violation of a monthly average limitation constitutes a violation for each day of the month. Star also argues that plaintiffs have erred in assessing multiple violations of a single parameter within a single quarter.[1]

On February 7, 1987, the Act was amended to provide that any person who violates the Act or any condition of a permit issued by a state "shall be subject to a civil penalty not to exceed $25,000 per day for each violation." 33 U.S.C. § 1319(d).

Of the courts that have considered this issue, most have determined that if a defendant has violated a monthly average limitation, it has committed thirty violations. *United States Envtl. Protection Agency v. City of Green Forest,* 921 F.2d 1394, 1407 (8th Cir.1990); *Atlantic States,* 897 F.2d at 1139; *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.,* 791 F.2d 304, 314 (4th Cir.1986); *International Union, UAW v. Amerace Corp.,* 740 F.Supp. 1072, 1085 (D.N.J.1990). *But see Student Pub. Interest Res. Group v. Monsanto Co.,* 29 ERC 1078, 29 ERC 1092, 1089, 1988 WL 156691 (D.N.J.1988) (court interpreted prior wording of this section, which provided for "$10,000 per day of such violation," and held that violation of monthly average limitation did not establish violation for every day of month). This court agrees with those courts that have interpreted the language of this section to mean that a violation of the monthly average limitation constitutes a violation for each day of the month.

■■■ Secondly, Star asserts that where it voluntarily undertook to sample and test its discharges more frequently than required under the permit, it should not be penalized. This argument is without merit.

---

**1.** In its brief in opposition to plaintiffs' motion, Star also alleged that plaintiffs had mischaracterized Star's monitoring results and had alleged violations that did not exist. Star's Brief in Opposition at 32–34. Plaintiffs revised their listing of alleged violations. *See* Plaintiffs' Reply Brief exhibit 21. Star did not contest those revisions.

Under the Act, each discharge of pollutants in excess of the limits specified in the permit is a violation of the permit and the Act. 33 U.S.C. § 1311(a). Moreover, this court agrees with those courts that have held that each infringement upon a permit limit is a violation of the Act even if the defendant monitored its discharge more than required under its permit. *Student Pub. Interest Res. Group v. P.D. Oil & Chem. Storage, Inc.*, 30 ERC 1201, 720 F.Supp. 1158 (D.N.J.1987); *affirmed in part and rev'd in part on other grounds*, 913 F.2d 64, (3d Cir.1990); *Student Pub. Interest Res. Group v. American Cyanamid Co.*, 23 ERC 2044, 2051 (D.N.J.1986).

■ For these reasons, the court concludes that plaintiffs did not err in their determination that Star had committed 104 violations of the discharge limitations in its permit in 1989. A violation of a permit by a discharger is a violation of the Act. 33 U.S.C. §§ 1311, 1318, 1319, 1365; *see also Student Pub. Int. Res. Group v. P.D. Oil & Chemical*, 627 F.Supp. 1074 at 1087 (D.N.J.1986); *American Cyanamid*, 23 ERC at 2047. Therefore, the plaintiffs are entitled to summary judgment on this issue.

Star does not contest plaintiffs' allegation that eight violations of the reporting requirements of the permit occurred in 1989. Summary judgment is equally appropriate for reporting violations. *Sierra Club v. Simkins Indus., Inc.*, 847 F.2d 1109, 1115 (4th Cir.1988), *cert. denied*, 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989); *Public Interest Res. Group v. Witco Chemical Corp.*, 31 ERC 1571, 1581, 1990 WL 66178, 1990 U.S.Dist. LEXIS 13341 (D.N.J.1990); *Student Pub. Interest Res. Group v. Fritzsche, Dodge & Olcott, Inc.*, 579 F.Supp. 1528, 1539 n. 14 (D.N.J.1984), *aff'd on other grounds*, 759 F.2d 1131 (3d Cir.1985).

Consequently, the court will grant plaintiffs' motion for partial summary judgment on the issue of Star's liability for 104 violations of the discharge limitations in its permit and for eight violations of the reporting requirements.

## G. Permanent Injunctive Relief

■ In order for a district court to grant preliminary injunctive relief, the moving party must demonstrate both a reasonable probability of eventual success in the litigation and that the movant will be irreparably injured before the trial if relief is not granted. *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982). The district court must also consider the possibility of harm to other interested persons from the grant or denial of the injunction and the public interest. *Id.* The standard for permanent injunctive relief is the same, except that the moving party must show actual success instead of probable success on the merits. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987); *Texaco Refining*, 906 F.2d at 941.

As discussed above, plaintiffs are entitled to summary judgment on the issue of Star's liability, so they have demonstrated actual success. Plaintiffs must also demonstrate that irreparable harm will result if the injunction does not issue. "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco*, 480 U.S. at 545, 107 S.Ct. at 1404; *see also Public Interest Res. Group v. Yates Indus., Inc.*, 757 F.Supp. 438, 454 (D.N.J.1991).

■ It is true that Star has not discharged effluent since December 27, 1989. It is also true that Star has installed new treatment technology to bring its discharge within permit limitations, with the possible exception of COD. Nevertheless, this court concludes that it is "sufficiently likely" that environmental injury will result if it does not issue the injunction. At present, Star claims that it does not intend to resume discharging effluent until it is able to bring its system on line. This is not sufficient. Without an injunction, Star may resume discharging in violation of per-

mit limitations after the order is entered on the motions presently pending, but before its equipment is operational. This would force plaintiffs to bring another action for permit violations occurring in 1991. Further, Star cannot prove that the treatment system it has selected will meet all authorized levels; Star has admitted that it is unable to determine whether this technology or any technology can produce full compliance with the COD limitation. Even if Star waited for its equipment to become fully operational before discharging, then, it may still discharge in violation of permit limitations.

As Star has already ceased discharging all effluent, it will not be harmed by the issuance of this injunction. Finally, the public interest in preventing further pollution in the Newark Bay and tidally-related waters favors injunctive relief. The court concludes, therefore, that plaintiffs have demonstrated that the issuance of a permanent injunction is warranted.

## CONCLUSION

In conclusion, this court finds that it has jurisdiction over this action, that the plaintiffs have standing to bring this suit, that the action is not moot nor premature, that a stay of these proceedings is not warranted, that plaintiffs have correctly calculated the number of Star's alleged violations and that permanent injunctive relief is appropriate. Therefore, the court will grant plaintiffs' motion for partial summary judgment as to Star's liability and will issue permanent injunctive relief. The court will deny defendant's cross-motion for summary judgment or stay. An order accompanies this opinion. No costs.